Scott, J.
Among the numerous grounds of defense stated in the answer to the alternative writ in this case, it is alleged in effect that the,, undertakings, held by the relator, were made and executed by the township trustees, solely by way of payment of an alleged subscription to the capital stock of the Columbus, Piqua and Indiana Railroad Company; and that, before the making of such alleged subscription by said trustees on behalf of said township, the county of Union, within which the township is situated, had been duly authorized, by a vote of the qualified electors of the county, to subscribe, and, on the 15th of April, 1851, had, by its commissioners, subscribed, 12,500 dollars to the capital stock of said railroad company. The facts thus alleged are not controverted.
The question then arises, whether, after a subscription to the stock of the railroad company had been made, pursuant to legal authority, by the commissioners of Unión county, the trustees of a township within that county, had authority, under the statute, to bind their township, by subscribing in its name to the stock of said company, and by executing and issuing, in payment of such subscription, written undertakings in the name of such township. It is clear that the making of such a subscription does not fall within the scope of the general powers and duties devolved upon township trustees as such, and that the power to bind their township by such an act must therefore be found, if it exists, in special legislative grant. For such express grant of power we are referred, in this case, to the act of February 23, 1849, incorporating the said railroad company; .and the act of March 12, 1851, amendatory thereof. The first of those acts only authorizes subscriptions to be made by townships through which the road may be located, if the commissioners of said county “ shall not be authorized by the vote of said county to subscribe stock to said road” It was manifestly the intention that the people of a *444 township should not be subjected to a double liability, under both county and township subscriptions, and hence the authority to subscribe is conferred upon townships, only in cases where the exercise of a like authority is refused or .declined by the county in which they may be situated.
Now, as, in this case, Union county had been “ authorized by the vote of the county to subscribe,” and had, in fact, subscribed to the stock of the company, before any action had been taken in the premises by the township or its trustees, we think their subsequent action upon the subject was wholly unauthorized by this act. But it is claimed that the amendatory act of 1851 clearly authorized subscriptions both by a county and the townships therein. But we do not so understand the provisions of this latter act. The policy of withholding the power of subscription from townships, until a county subscription should have been declined or refused, is clearly manifested not only in the original charter of this company, but in other similar acts of incorporation passed about the same time. This amendatory act is not, therefore, to be so construed as to imply an intention to abandon that clearly expressed policy, unless its terms manifest such an intention with at least reasonable certainty. But this is so far from being the case, that we think the fifth section of the amendatory act, fairly construed, shows an adherence to the policy of preventing double subscriptions. This act was passed more than two years after the date of the original charter, and it was, at least, doubtful, whether subscriptions could still be made by counties, under the authority conferred by the original act. The act of February 28, 1846, had provided that when counties should thereafter be authorized to subscribe to the stock of railroad companies, the commissioners ef such counties' should notify the electors thereof to vote on the question of subscription at the next annual election. To obviate all difficulties or doubts which might arise from this apparent limitation of the time within which the vote of the county was to be taken, the fifth section of the amendatory act expressly renews the authority to subscribe, to the coun *445 ties -which had been previously thus authorized, and which had not already exercised the power conferred upon them ; and, in, “ such” counties, it also renewedly authorizes township subscriptions ; and,' proceeding further, it confers a similar power for the first time upon cities and towns in 11 such” counties; and it also removes what might otherwise have been a ground of doubt, by expressly authorizing subscriptions by counties into which, as well as by those through which the road might be located. Now, as this section authorizes subscriptions to be made only by counties which had not theretofore subscribed, and by townships, cities, towns in such counties, upon what conceivable ground could the policy rest, of permitting double subscriptions in counties which had not theretofore subscribed, and refusing such a privilege in counties which had already subscribed ? That such a discrimination was intended is highly improbable. But the further provisions of this section go far to exclude all doubt upon this question. Eor, the authority conferred by this section, whether renewedly upon the grantees of the original power, or, for the first time, upon new grantees, is expressly conferred and required to be exercised “ under the provisions of the act of incorporation of said company, passed February 23, 1849.” By this clause, the limitations, conditions, and provisions of the original act, are annexed to the grants of power contained in this section, except in so far as they are modified by the amendatory act itself. Among, the provisions, that which limits the authority to make township subscriptions to the case in which a subscription on behalf of the county has not been authorized, is too important to be overlooked. As Union county had, in this case,, been authorized to subscribe, and had duly made such subscription to the stock of this company before the trustees of the township attempted to exercise th$ power supposed to have been conferred upon them by the statute, we^ are clearly of opinion that, under neither of the acts referred, to, had they any power to bind their township by their action in the premises.
The grant of power to the trustees was contingent only, *446 and until the proper contingency arose, they were wholly destitute of authority in the premises. That the township can not, in such case, be bound by the unauthorized acts of its trustees, was expressly held in the case of Hopple v. Brown Township, 18 Ohio St. Rep. 311. And we think the doctrine is but a logical deduction from undoubted general principles.
Writ of peremptory mandamus refused.
Brinkerhoef, O.J., and Day, White, and Welch, JJ., concurred.